IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| BIG BLUE CORP. | : | Case No. 07-00653 (GAC) |
| d/b/a REDONDO WASTE, | : | |
| | : | |
| Debtor | : | CHAPTER 11 |
| _____ | : | |
| | : | |
| BIG BLUE CORP. | : | |
| d/b/a REDONDO WASTE, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adv. No. 07-00026 |
| | : | |
| L&M WASTE SERVICE CORP., | : | |
| | : | |
| | : | |
| Defendant | : | |
| _____ | : | |

**<u>DECISION AND ORDER</u>**

The debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 12, 2007.  On February 27, 2007, the debtor filed this adversary proceeding against L&M Waste Service, Inc., seeking a temporary restraining order and a preliminary injunction to allow the debtor to dispose of Regulated Biomedical Waste ("RBW") in the Yauco Sanitary Landfill.  The debtor alleged that it has a contract with L&M Waste which allows for the disposal of treated and shredded RBW at the Yauco landfill and that the RBW which it seeks to dispose of is treated and shredded.  The debtor stores the RBW in the Municipality of Caguas and the debtor indicates that the waste accumulates at the rate of approximately

24,000 pounds per day and that no more biomedical waste can be stored pending disposition.

The Court scheduled a hearing for March 2, 2007, and gave notice of the hearing to the defendant, as well as the Puerto Rico Environmental Quality Board ("PREQB"). PREQB made a special appearance and filed an opposition to the debtor's request for a TRO (dkt. #9). At the hearing, the Court ordered PREQB to inspect the Yauco Sanitary Landfill on March 6, 2007 and continued the hearing to March 7, 2007, at which time the Court required a representative of PREQB to be available to inform the result of the inspection. The Court also ordered L&M Waste to accept the disposal of the RBW beginning Monday March 5, 2007 until the hearing on Wednesday, March 7, 2007, contingent upon the RBW being properly shredded and treated and in compliance with the requirements of the contract for disposal at the landfill and with all PREQB requirements.

At the hearing of March 7, 2007, based on the testimony of the inspector for PREQB and the Operation's Manager for the Yauco Sanitary Landfill, the Court rescinded the order allowing for the disposal of the RBW until the matter is finally resolved. The hearing was continued to March 12, 2007 and completed on March 13, 2007. At that time, and based on the PREQB inspector's testimony that the debtor's waste does not meet the criteria for the disposal of RBW, the Court denied the debtor's request for a TRO and held it

2

in abeyance until PREQB examines the emergency situation and reports to the Court what specific actions it intends to take to protect the public interest and the health of the communities that may be affected by the solid waste disposal problems discussed by the debtor's expert at the hearing. The Court noted throughout the hearings that PREQB is not party to this adversary proceeding and has not submitted itself to the jurisdiction of the Court. Notwithstanding, PREQB agreed to file a full report of the situation in Caguas and in the Yauco landfill within ten working days of the March 13 hearing. The Court indicated that further action by the Court would depend upon the report and actions by PREQB.

Since the hearing, the Court takes judicial notice that various fires, on two separate dates, have broken out at the debtor's storage facilities. When the last blaze was being extinguished, numerous media reports indicated the existence of pathological waste, which the debtor does not have a permit to dispose of, including fetuses and body parts.

Prior to the first fire, PREQB informed the Court that it had scheduled a meeting with the debtor for March 21, 2007, with the objective of expediting the treatment, shredding and disposition of the RBW, which was being illegally stored in violation of PREQB regulations, which only permit the storage of untreated RBW for fifteen days (dkt. #17). PREQB informed possible permit

modifications and that L&M Waste has offered to supply the debtor with additional trucks needed to pick up and dispose of RBW in the Yauco landfill.

After the meetings between the debtor and PREQB, the debtor filed an urgent motion on March 25, 2007, seeking to have PREQB held in contempt (dkt. #19). In the motion, the debtor indicates that as of November 27, 2006, there were 2 million pounds of waste stored at its facilities. As of December 12, there were 3.2 million pounds. The debtor accepts that the storage of the waste is dangerous. The debtor indicates that PREQB requested that the debtor present a plan for compliance and that disposal of the accumulated waste can take from three months to 6.5 years according to the methodology allowed by PREQB's record of decisions.

Most troubling to the debtor is that PREQB issued an order in an administrative proceeding, which was pending before the filing of the bankruptcy petition, in which the debtor is ordered to cease and desist after March 28, 2007, from receiving RBW until all stored material is treated, destroyed and disposed of. The debtor alleges that this will aggravate the underlying problem since RBW will be stored at each of the medical treatment centers. The debtor contends that it handles 70% of the biomedical waste on the Puerto Rico mainland and 100% of the waste in Vieques and Culebra, including the Department of Health facilities. The debtor also argues that if it ceases collecting RBW, it will have to spend

4

great amounts to treat and dispose of waste without receiving current income and that if the debtor defaults, its competitor, which charges three times as much for the collection, will step in, resulting in the increase of medical costs.  Ultimately, the debtor requests that the Court conclude that PREQB knew of the developing situation for several months before the hearings on the TRO and that the PREQB's order to the debtor does not meet the Court's requirements to file a report on the emergency situation.  The debtor requests that the Court declare the administrative order, to cease and desist receiving RBW, void and allow the debtor to continue receiving RBW, while treating the RBW stored at its facilities.

On March 26, 2007, PREQB filed a second motion to inform status (dkt. #22).  In this motion PREQB details the fire which was started at an incinerator facility owned by the debtor, where RBW was being illegally stored.  Based on the information collected and the impact of the burned RBW on the surrounding community, the burned and partially burned RBW was removed and disposed of at an authorized sanitary landfill.  PREQB detailed the meetings between the parties and ultimately concluded that the debtor must comply with its own Permit Operation Plan, which enumerates a capacity to treat and shred 120,000 pounds of RBW per day.  PREQB indicated that it is necessary for the debtor to stop receiving RBW to start reducing the quantities of RBW illegally stored in its facilities

and that the order would stay in effect until the RBW stored at its facilities is less than fifteen days old.  At the rate of 120,000 pounds of RBW per day, PREQB estimates that the debtor will dispose of all of the RBW in two months.  PREQB indicated that this time could be reduced to half if the debtor subcontracts the treatment and shredding to be done at another available site simultaneously. PREQB contends that its administrative order provides for the RBW generators to make the necessary arrangements for the disposal of the newly generated RBW while the debtor complies with its duty to treat and shred the illegally stored RBW.  PREQB indicates that pursuant to law, the debtor is being given the opportunity to remedy the situation, but if it fails to comply with the order, actions to assume total control of the environmental emergency situation will be taken by PREQB in accordance with law.

On March 26, 2007, the debtor filed a second urgent motion seeking a finding of contempt and order to PREQB (dkt. #23).  This motion attached various exhibits.  The debtor's letter of December 12, 2006, indicates that the 3,220,000 pounds of untreated RBW is potentially highly infectious and that it is being stored in two installations and forty-nine trailer vans within the city of Caguas.  The remainder of the exhibits are in the Spanish language and will not be considered by the Court at this time.  PREQB filed a notice of intent to oppose the debtor's motions seeking a finding of contempt (dkt. #25).

<u>DISCUSSION</u>

As it is clear to the parties, it is also clear to the Court that the storage of untreated RBW has created a dangerous situation, both in terms of public health and in terms of the impact on the environment. The debtor is storing millions of pounds of untreated RBW. The debtor may also be storing prohibited pathological waste. The fires at the facilities have exacerbated the problem caused by the storage of this gigantic quantity of biomedical waste within a municipality. As admitted by the debtor in its letter to PREQB, this waste is potentially highly infectious.

The debtor alleged in its verified complaint that it was accumulating new RBW at the rate of 24,000 pounds per day. Moreover, the debtor admitted that no more RBW could be stored, pending disposition of the accumulated waste. Thus, irrespective of the implications for the debtor's financial health, it appears genuinely necessary to require the debtor to dispose of the stockpile of waste prior to accepting more. Moreover, it appears that there are alternatives to storage of the accumulating RBW at the facilities that generate it. Accordingly, if the debtor is not collecting the RBW, this will not result in another kind of dangerous storage situation in the facilities that generate RBW.

PREQB is not a party to this dispute and the Court does not have jurisdiction over it to issue an order invalidating its

administrative order; which requires the debtor to cease and desist from receiving any more RBW, until it is able to treat and shred the RBW which it is storing.  Notwithstanding that PREQB has not submitted to the jurisdiction of the Court, PREQB has appeared in this matter and greatly assisted in attempting to resolve a precarious situation.  The Court accepts PREQB's motions informing the status of the situation (dkts. #17 and #22) and concludes that the debtor must comply with PREQB's orders unless or until the orders are rescinded by PREQB or overruled through the administrative process.  Accordingly, the debtor's requests for emergency findings, holding the PREQB in contempt, will be denied.

ORDER

WHEREFORE IT IS ORDERED that the urgent motions (dkts. #19 and #23) filed by the debtor, seeking to hold PREQB in contempt and seeking to invalidate the administrative order issued by PREQB, which requires the debtor to cease and desist from accepting RBW, are DENIED.

SO ORDERED.

San Juan, Puerto Rico, this 27th day of March, 2007.

s/Gerardo A. Carlo

_____
Gerardo A. Carlo
Chief U.S. Bankruptcy Judge